UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ORIE ANDERSON,
    Plaintiff,

vs.

O.D.R.C. SOUTHERN
CORRECTIONAL FACILITY, *et al.*,
    Defendants.

Case No. 1:16-cv-361

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

    Plaintiff, an inmate at the Ohio State Penitentiary in Youngstown, Ohio and former inmate at the Southern Ohio Correctional Facility (SOCF), brings this pro se prisoner civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights by SOCF employees. Plaintiff names as defendants Sergeant McCroskey, Sergeant Felts and "John/Jane Doe," whom plaintiff has not identified to date. This matter is before the Court on the named defendants' motion to dismiss the complaint (Doc. 12), plaintiff's response in opposition (Doc. 16), and defendants' reply memorandum (Doc. 17).

## I. Allegations of the complaint

    This action arises out of defendants' alleged mishandling of plaintiff's legal materials when plaintiff was transferred to SOCF in August 2015. (Doc. 3). Plaintiff has attached a sworn affidavit to the complaint[1] in which he makes the following allegations: Plaintiff was transferred from "Toledo Prison" to SOCF on August 10, 2015, with a "legal box" that contained his trial transcripts, a DVD, an affidavit, and other legal documents. The legal box was transported to SOCF with plaintiff and was delivered there with other personal property of plaintiff. When plaintiff received his property sheet at SOCF, he saw that his legal property was not listed.

---

[1] Because plaintiff signed the affidavit which includes his allegations under the pains and penalty of perjury, the complaint and attached affidavit have the same force and effect as an affidavit under 28 U.S.C. § 1746.

Plaintiff contacted Sergeant Felts and inquired into the location of his property. After plaintiff made inquiries for about three weeks with no results, Sergeant Felts told plaintiff that he had searched and could not find plaintiff's legal property. (*Id*.; Exh. K). Sergeant Felts told plaintiff not to expect his help because plaintiff had assaulted a staff member, which was not tolerated at SOCF.

Plaintiff alleges that he "was denied a theft loss report and the opportunity to file a grievance" by Sergeant Felts, Deputy Warden Cool, Deputy Warden Cadogan, and Warden Ron Erdos. (*Id*., citing Exhs. F, H, I, J). Plaintiff was eventually directed to Sergeant McCroskey, the individual in charge of the property room at SOCF, who told plaintiff that he had his legal property and nothing was missing. Plaintiff was told he would receive everything once he was moved to "4B B lock." (*Id*.; Exh. I).

On October 15, 2015, plaintiff's "4-B property" was delivered to him. His legal property was combined with the rest of his property in a box, and a DVD deposition from an eye witness "confessing [plaintiff's] innocence," another eyewitness's affidavit, and "small sections" of plaintiff's transcript were missing. Plaintiff and McCroskey both signed the property sheet, on which McCroskey had noted "legal was missing." (*Id*.; Exh. E).

Plaintiff alleges that the loss of his property was not accidental but that instead his items were purposely taken and disposed of with the "evil intent" to cause him harm. Plaintiff believes this to be the case because SOCF staff have told plaintiff multiple times that his stay "will be hell" and that he will "get what [he] deserve[s]" for his action at the last prison. Plaintiff alleges that the deprivation of the legal evidence was a direct violation of his constitutional rights.

Plaintiff indicates in the complaint that SOCF has a prisoner grievance procedure but that he did not present the facts related to his complaint in the state grievance process. (Doc. 3, p. 3).

Plaintiff alleges that he "was denied a grievance by [the] institution" and that "[d]ue to foul play [his] request was constantly ignored[.]" (*Id.*). Plaintiff alleges he presented an Informal Complaint Resolution (ICR) to the Warden, the Deputy Warden, and several officers, but the ICRs were not "productive, everyone directed [him] to someone different. [Sergeant] Felts said he can't find it. [Sergeant] McCroskey said that [he] would recieve [sic] it later." (*Id.*). Plaintiff also avers in his affidavit that he filed an ICR with McCroskey on October 16, 2015, informing McCroskey that the DVD deposition and affidavit are critical to plaintiff's claim of innocence. (*Id.*; Exhs. A, B, C, D).

Plaintiff has submitted the following documents as attachments to his complaint: (1) a copy of the ICR form he completed and submitted to Deputy Warden Anthony Cadogan on September 18, 2015, regarding his box of missing legal property and his belief it had been taken in retaliation for an assault plaintiff had committed at the Toledo prison, and a partially legible response from the Deputy Warden dated September 22, 2015, advising plaintiff he did not supervise the property room (Doc. 3, Ex. G); (2) a copy of the ICR form plaintiff completed and submitted to Deputy Warden Cool on September 20, 2015, regarding his missing legal property and alleged retaliation, and a partially legible response regarding contacting "Lt. Humphrey" (Doc. 3, Exh. H); (3) a "Response to Kite" from Warden Erdos regarding plaintiff's kite of September 21, 2015, in which the Warden states: "You submitted an ICR to the DWSS. He informed you to contact DWO Cool who supervises those you named in ICR. Your property is most likely still in propertry [sic] room as extra legal storage is not permitted in J2. Try kiting Sgt. McKroskey." (Doc. 3, Exh. J); (4) a copy of the ICR form plaintiff completed and submitted to Sergeant McCroskey on September 23, 2015, in which plaintiff stated he had been told to contact Sergeant McCroskey about the missing property and asking for the name of the

corrections officer who signed the property sheet, and a response from Sergeant McCroskey dated September 29, 2015, advising plaintiff that he could not have paperwork in J-2 unless it was marked "current legal," and plaintiff had not marked any of his property in that manner (Doc. 3, Ex. I); (5) a copy of the ICR form plaintiff completed and submitted to Sergeant Felts dated October 1, 2015, in which plaintiff wrote that Sergeant Felts told him he was "headed to find [plaintiff's] legal box" and asking about the results of the search, and a response to the ICR from Sergeant Felts stating he had been through the property room twice and could not find a box of legal property for plaintiff, and advising plaintiff to consider sending an ICR to Sergeant McCroskey in the property room (Doc. 3, Exh. K); (6) a copy of an ICR form plaintiff completed and submitted to Sergeant McCroskey dated October 16, 2015, complaining that plaintiff had received most of the legal property that was in his legal box but he was still missing certain items, including a deposition, a DVD with evidence on it, and a section of his trial transcripts, and a response from a captain dated December 2, 2015, advising plaintiff to meet with his unit sergeant and complete a loss-theft report and advising plaintiff that he "spoke with the property room and all your legal work has been given to you. If you have proof of something missing send it to the inspector" (Doc. 3, Exh. M); (7) a copy of an ICR form plaintiff completed and submitted to the "Inspector" on December 14, 2015, regarding proof of his missing property and requesting a copy of his property sheet, and a response advising plaintiff to meet with his sergeant to complete a loss/theft report and stating the Inspector had informed "M. Nolan and [Sergeant] Bailey" to see plaintiff (Doc. 3, Exhs. N, O); and a copy of an ICR form plaintiff completed and submitted to the Inspector of SOCF on January 11, 2016, which includes a response advising plaintiff: "The [Inspector] does not answer ICR's only kites per AR 5120-9-31. M. Nolan will address this." (Doc. 3, Exh. P).

### II. Defendants' motion to dismiss

Defendants move to dismiss the complaint on several grounds. (Doc. 12). Defendants initially contend they are entitled to qualified immunity under § 1983 because plaintiff's allegations that defendants "lost his legal materials [] during his transfer to another correctional institution" do not rise to the level of a constitutional violation. (*Id.* at 3, citing Doc. 3 at 3, 6; Plaintiff's Affidavit, Exhs. F, G, H, I, K, L, M, N, and P). Defendants further allege that the complaint fails to state a claim to relief against them under § 1983 because plaintiff premises his claims against defendants on their alleged failure to act, which is insufficient to support the imposition of liability under § 1983. (Doc. 12 at 7-8). Defendants also construe plaintiff's claims brought under § 1983 strictly as negligence claims arising under Ohio law and move to dismiss the complaint on the ground they are immune from liability on any state law claims for negligence unless and until the Ohio Court of Claims determines otherwise. (*Id.* at 4-6, citing Ohio Rev. Code § 9.86). Finally, defendants move to dismiss the complaint pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), on the ground plaintiff has failed to properly exhaust his administrative remedies, and they argue that dismissal on this ground should be with prejudice because plaintiff cannot retroactively comply with the timely filing requirements of Ohio's inmate grievance procedure. (*Id.* at 8-11).

### III. Standard of review

Defendants style their motion to dismiss as a motion for judgment on the pleadings. (Doc. 12). Defendants state in the introduction to the motion that they move for dismissal pursuant to Fed. R. Civ. P. 12(c), 12(b)(1), and 12(b)(6). (*Id.* at 2). However, defendants' motion is not properly brought under Rule 12(c) because the pleadings were not closed when

defendants filed the motion. *See* Fed. R. Civ. P. 12(c) (a party may move for judgment on the pleadings "[a]fter the pleadings are closed."). Nor have defendants set forth the standard of review under Rule 12(c) or discussed application of the Rule to plaintiff's claims in either their motion to dismiss or their reply memorandum. (Docs. 12, 17). Similarly, defendants have not set forth the standard for a dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction or discussed why dismissal of the complaint under this provision of Rule 12 is warranted. Insofar as defendants move to dismiss the complaint based on plaintiff's failure to exhaust his administrative remedies, which is an affirmative defense on which defendants bear the burden of proof, *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)), the Court finds their motion is properly construed as a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief. *See Bock*, 549 U.S. at 215 (a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face) (citations omitted). The Court will therefore consider whether defendants have carried their burden to show that plaintiff's complaint must be dismissed pursuant to Rule 12(b)(6) for failure to exhaust his administrative remedies.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974). *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court "consider[s] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see*

*also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007) ("when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To avoid dismissal for failure to state a claim for relief, plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While the Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

## IV. Resolution

### A. Exhaustion of administrative remedies

In support of their affirmative defense that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, defendants cite to representations in the complaint indicating that plaintiff did not pursue the inmate grievance procedure available to him before filing his

complaint in this Court. (Doc. 12 at 8-11). Defendants maintain that given plaintiff's admission that he did not properly exhaust his administrative remedies, his suit should be dismissed pursuant to the PLRA, 42 U.S.C. § 1997e(a). In response, plaintiff argues that defendants' motion to dismiss should be denied because he made multiple attempts to grieve this matter and obtain relief but his requests were either ignored or directed to another prison official who ultimately ignored his request. (Doc. 16 at 2, citing Exhs. F, H, I and J).

Exhaustion of administrative remedies "is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Bock*, 549 U.S. at 211 (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. . . ." *Porter*, 534 U.S. at 532.

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or

statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member within 14 days of the event giving rise to the complaint, and the supervisor has seven days to respond to the complaint in writing. Ohio Admin. Code § 5120-9-31(K)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may obtain a Notification of Grievance form and file a formal grievance with the Inspector of Institutional Services at his institution of confinement within 14 days from the date of the informal complaint response. Ohio Admin. Code § 5120-9-31(K)(2). The Inspector of Institutional Services is required to provide a written response to the inmate's grievance within 14 calendar days of receipt of the grievance. *Id*. If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of the Chief Inspector within 14 days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(K)(3). The Chief Inspector is to provide a written response within 30 calendar days of receiving an appeal, unless he extends the time frame for good cause and notifies the inmate. *Id*. A decision of the Chief Inspector is final and concludes the grievance process. *Id*.

### B. Plaintiff failed to exhaust his administrative remedies.

Here, plaintiff's allegations in the verified complaint, together with the exhibits attached to his complaint, demonstrate that plaintiff failed to exhaust his administrative remedies. Plaintiff acknowledges that SOCF has a prisoner grievance procedure. (Doc. 3 at 3). Plaintiff also acknowledges that he failed to present the facts relating to his complaint in the prisoner

grievance procedure. (*Id.*). Plaintiff vaguely alleges in the complaint that he was "denied a grievance by institution" and "[d]ue to foul play [his] request was constantly ignored." (*Id.*). Insofar as plaintiff asserts he was prevented from exhausting his administrative remedies, his generalized assertions, absent any factual allegations to support them, are insufficient to excuse plaintiff's failure to exhaust his administrative remedies. *See Iqbal*, 556 U.S. at 678 (the complaint need not contain "detailed factual allegations" but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). Plaintiff also alleges he was denied "the opportunity to file a grievance" by Sergeant Felts, Deputy Wardens Cool and Cadogan, and Warden Erdos, citing to the ICRs he filed with each of these prison officials. (Doc. 3 at 7). Plaintiff again fails to allege any facts showing how these individuals somehow denied him "the opportunity to file a grievance," and nothing contained within the ICRs cited by plaintiff can be construed as inhibiting plaintiff in the grievance process. Each of these officials responded to plaintiff's ICR, and the ICR form itself advised plaintiff that "[c]omplaints not resolved may be addressed in accordance with 5120-9-31," the inmate grievance procedure. (Doc. 3, Exhs. F, H, I, J).

Moreover, the verified complaint and attached exhibits demonstrate that despite his allegations that his complaints were ignored, plaintiff was able to successfully complete the first step of Ohio's inmate grievance procedure. Plaintiff filed multiple ICRs related to the loss of his legal property on September 18, 2015, September 20, 2015, September 23, 2015, October 1, 2015, October 16, 2015, December 14, 2015, and January 11, 2016. (Doc. 3 at 3; Exhs. G, H, I, K, L, M, N, P). Plaintiff received a response to each of the ICRs, although he did not obtain a satisfactory resolution of his informal complaints. (*Id.*). Because plaintiff was dissatisfied with the responses he received at the first step of the grievance process, he was required to proceed to

the second step by submitting a Notification of Grievance to the Inspector of Institutional Services and then complete the third step by submitting an appeal to the Chief Inspector. Ohio Admin. Code § 5120-9-31(K)(2), (K)(3).

The verified complaint and attached documentation show that plaintiff failed to present his legal property claim at the second and third steps of the grievance procedure. (Doc. 3). Plaintiff does not deny in his response to the motion to dismiss that he failed to complete the second and third steps of the inmate grievance procedure. (Doc. 16). Plaintiff asserts in his response to the motion that he "made multiple attempts to grieve this matter" and rectify the issue involving his legal property by submitting a letter to the Major Chief of Security on September 17, 2015 (Exh. F); ICRs on September 20, 2015 and September 23, 2015 (Exhs. H, I); and a "kite" to the Warden on September 21, 2015 (Exh. J). (Doc. 16 at 2). Plaintiff alleges that his requests were either ignored or directed to someone else who ultimately ignored his request. (*Id.*). However, plaintiff does not allege that despite his dissatisfaction with the responses to his ICRs and other initial complaints, he made "affirmative efforts to comply with" the next steps of the grievance process as he must do in order to exhaust his administrative remedies. *See Rishner v. Lappier*, 639 F.3d 236, 240 (6th Cir. 2011). Nor does plaintiff allege that he was prevented in any manner from proceeding to the next steps of the grievance process.

For these reasons, dismissal of the complaint is warranted based on plaintiff's failure to exhaust his administrative remedies pursuant to Ohio Admin. Code § 5120-9-31(K). Plaintiff admits in the verified complaint that he did not present the facts related to his complaint in the prisoner grievance procedure that was available to him. Plaintiff's verified complaint and exhibits show that plaintiff pursued only the first step of the inmate grievance procedure, and plaintiff does not deny in his response to the motion to dismiss that he failed to complete the

second and third steps of the grievance procedure despite his dissatisfaction with the response to his ICRs. Nor has plaintiff alleged facts in the complaint or in response to defendants' motion to dismiss to support a finding that he was prevented from exhausting his administrative remedies. Plaintiff is therefore barred under the PLRA, 42 U.S.C. § 1997e(a), from pursuing his claims in this Court until he has exhausted his remedies under the Ohio inmate grievance procedure.

Defendants allege that the dismissal of plaintiff's complaint for failure to exhaust his administrative remedies should be with prejudice. (Doc. 12 at 11; Doc. 17 at 12-13). Defendants acknowledge that dismissal of a case for failure to exhaust is normally without prejudice, but defendants allege dismissal with prejudice is warranted when compliance with the timeliness requirement of the Ohio inmate grievance procedure is not possible. (*Id*.). Contrary to defendants' position, Sixth Circuit law holds that the proper disposition of an unexhausted claim under the PLRA is dismissal without prejudice. *Konteh*, 450 F.3d at 653 (collecting cases); *Chasteen v. Jackson*, No. 1:09-cv-413, 2012 WL 1564493, at *5 (S.D. Ohio May 3, 2012). Accordingly, plaintiff's unexhausted claims should be dismissed without prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion to dismiss the complaint based on plaintiff's failure to exhaust his administrative remedies (Doc. 12) be **GRANTED** and this case be **DISMISSED** without prejudice.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 12/1/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ORIE ANDERSON,<br>    Plaintiff, | Case No. 1:16-cv-361<br><br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| O.D.R.C. SOUTHERN<br>CORRECTIONAL FACILITY, *et al.*,<br>    Defendants. | **REPORT AND<br>RECOMMENDATION** |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).